**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE CHEMOURS COMPANY FC LLC,<br><br>Plaintiff,<br><br>v.<br><br>AGRI-SYSTEMS INC. d/b/a ASI INDUSTRIAL,<br><br>Defendant. | Civil Action No. 26-1066-GBW |

Lauren E.M. Russell, Tyler E. Cragg, Peter T. Sabini, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; John M. Johnson, LIGHTFOOT, FRANKLIN & WHITE LLC, Birmingham, Alabama.

*Counsel for Plaintiff*

Kenneth L. Dorsney, Barnaby Grzaslewicz, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, Delaware; Peter A. Angelov, Andrew W. Tao, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee; Ian P. Faria, BRADLEY ARANT BOULT CUMMINGS LLP, Houston, Texas.

*Counsel for Defendant*

**MEMORANDUM OPINION**

November 24, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are two motions: (1) Plaintiff The Chemours Company FC LLC's ("Plaintiff" or "Chemours") Motion for Preliminary Injunction ("Plaintiff's Motion") (D.I. 3), and (2) Defendant Agri-Systems Inc. d/b/a ASI Industrial's ("Defendant" or "ASI") Motion to Stay Litigation and Compel Arbitration (D.I. 13) ("Defendant's Motion"). Both Motions have been fully briefed. D.I. 4; D.I. 12; D.I. 14; D.I. 17; D.I. 20. For the below reasons, the Court denies Plaintiff's Motion and grants-in-part and denies-in-part Defendant's Motion.

## I. BACKGROUND

The following allegations are drawn from the Complaint (D.I. 1) and averments from the parties' filings.

Chemours is a chemical company containing a facility for its Titanium Technologies division at New Johnsonville, Tennessee. D.I. 1 ¶ 9. In 2024, Chemours decided to construct a filter press facility at the New Johnsonville location and sought bids from contractors for the construction of the filter press facility and installation of equipment. *Id.* ¶¶ 10-11. ASI was the winning bidder. *Id.* ¶ 11. Chemours and ASI then entered into a Procurement and Construction/Construction Management Services Agreement ("Agreement"). *Id.* ¶¶ 1, 12. Under the Agreement, ASI was required to "perform its Services and Work in a careful and workmanlike manner and take all necessary precautions in processing, handling, transporting and disposing of material, product, and waste involved in the performance of Services and Work, to avoid an unhealthy or unsafe work environment, injuries to persons, damage to property or environment." *Id.* ¶ 14 (citing D.I. 1, Ex. A ("Agreement") § 12.24.1). As part of the Agreement, Chemours had a right to "terminate the Agreement for Default if it determined that ASI was 'fail[ing] materially

to perform any of its duties or obligations under the Agreement.'" *Id.* ¶ 17 (citing Agreement § 11.1). Chemours could terminate the Agreement by providing ASI with written notice of its intent to terminate the Agreement for default, as well as giving "direction of curative action seven (7) days before actually putting the termination into effect." *Id.* "Thereafter, a termination for default may only be avoided if ASI begins to take the curative action prescribed by Chemours and ASI has "made progress satisfactory to Chemours." *Id.*

After ASI began working on the filter press project, Chemours alleges that ASI "was not capable of performing its obligations under the Agreement." *Id.* ¶ 18. Following repeated safety violations, Chemours sent ASI a Stop Performance Notice Letter on April 14, 2026. *Id.* ¶ 25. The letter identified various ways that ASI was committing safety violations of § 12.24.1 of the Agreement. *Id.* ¶ 26. After ASI failed to correct the safety violations within seven days, as required by § 12.24.3 of the Agreement, Chemours issued a notice of termination on April 28, 2026. *Id.* ¶¶ 28, 29. As an alternative grounds for termination, Chemours also provided "three failures by ASI to perform its obligations or duties" and provided ASI with curative steps. *Id.* ¶ 30. ASI failed to take any curative steps. *Id.* ¶ 34. On May 5, 2026, ASI objected to Chemours' notice of termination. *Id.*

Since termination of the Agreement, ASI has sought payment for outstanding invoices, along with a 10% termination fee. *Id.* ¶ 35. ASI also sought to "perfect a lien against Chemours in Tennessee for amounts it claims it is owed." *Id.* ¶ 36. Seeking relief, ASI initiated an arbitration on July 13, 2026, with the American Arbitration Association. *Id.* ¶ 39. Chemours then filed the Complaint in this action on August 20, 2026, with the following claims: (1) declaratory judgment that the termination under the Agreement was for default, (2) breach of contract, (3) declaratory

judgment that Chemours is entitled to funds held in escrow, and (4) injunctive relief enjoining ASI from continuing to pursue arbitration. *See generally* D.I. 1.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

"A preliminary injunction is an 'extraordinary remedy' that should be granted only in 'limited circumstances.'" *Alexion Pharms., Inc. v. Samsung Bioepis Co.*, C.A. No. 24-5-GBW, 2024 WL 2111988, at *1 (D. Del. May 6, 2024), *appeal dismissed*, No. 2024-1829, 2024 WL 4041347 (Fed. Cir. Sep. 4, 2024) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). "The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the district court." *Id.* (citing *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020)).

A party seeking a preliminary injunction must show that the following four factors favor relief: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Johnson & Johnson v. Samsung Bioepis Co.*, 173 F.4th 454, 460 (3d Cir. 2026) (quoting *Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 407 (3d Cir. 2021)). "The first two factors are the 'most critical,' and only if the moving party has made the requisite showing for both must the district court reach the remainder." *Id.*

### B. Arbitration

"The Federal Arbitration Act (FAA) reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). It requires that the Court, "upon being satisfied that

[an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

To determine whether an issue in a suit or proceeding is "referable to arbitration," courts "must consider two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (i.e., its scope)." *Remicade*, 938 F.3d at 519 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019)). Subject to certain exceptions, state law governs both questions. *Id.* at 522; *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019).

## III. DISCUSSION

### A. The FAA Governs the Parties' Arbitration Provision

The parties first disagree on whether Delaware law or federal law governs the parties' arbitration provision and, thus, the instant dispute over arbitrability. The relevant provision in the parties' Agreement regarding the applicable law states:

> The Agreement and the rights and obligations of the Parties shall be governed by, construed and enforced in accordance with the laws of the State of Delaware without giving effect to the principles of conflicts of law. The Agreement shall not be governed by the U.N. Convention on Contracts for the International Sale of Goods. The Parties consent and submit exclusively to the jurisdiction and service of process of the courts of the State of Delaware or the courts of the United States located in Delaware provided that all questions concerning the construction or effect of patent applications and patents shall be decided in accordance with the laws of the country in which the particular patent application or patent has been filed or granted, as the case may be.

Agreement § 12.33. Thus, it is undisputed that Delaware law governs the contract generally. However, the parties disagree on whether the FAA governs the arbitration provision of the Agreement, which is memorialized in § 12.41:

> If such individuals do not resolve such dispute within 30 days after written notice (the "Escalated Negotiation Period"), then within 15 days after that the Parties may agree to resolve any dispute arising out of or relating to this Agreement promptly by confidential non-binding mediation under the then current Conflict Prevention and Resolution (CPR) Mediation Procedure (such mediation proceeding to be completed within sixty days) before resorting to arbitration or litigation. Also within 15 days after the Escalated Negotiation Period, the Parties shall determine whether they agree to binding arbitration of any dispute that may remain after mediation; alternatively the Parties may elect to proceed directly to binding arbitration without mediation. Any arbitration shall be seated and conducted in a location mutually acceptable to the Parties by a panel of three arbitrators chosen mutually by the Parties, such arbitration to be conducted in accordance with the then current version of the Commercial Arbitration Rules of the American Arbitration Association.

Agreement § 12.41. In Plaintiff's view, Delaware law governs the arbitration provision because the "plain language of the Agreement indicates the parties' intent that Delaware law should apply to any disputes arising therefrom." D.I. 4 at 5. Defendant responds that Delaware law does not govern because the arbitration provision does not reference the Delaware Uniform Arbitration Act ("DUAA"). D.I. 12 at 6. Rather, Defendant avers that the Federal Arbitration Act (FAA) governs the arbitration provision. *Id.* In so doing, Defendant relies on *Frères v. Solazyme, Inc.*, a case where the court found that the FAA governed an agreement—even though the agreement contained two choice of law provisions stating that Delaware law applies—because the parties' agreement did not explicitly mention the DUAA. 154 F. Supp. 3d 68, 74 (D. Del. 2015). Like in *Frères*, Defendant claims that the Agreement's failure to mention the DUAA indicates the parties' intent for arbitrability disputes to be governed by the FAA. D.I. 12 at 6-7. Defendant also notes that the FAA governs agreements, like the instant one, that involve interstate commerce. D.I. 12 at 6 (citing *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006)); *see* D.I. 17 (not disputing that the Agreement involves interstate commerce).

The Court finds that the FAA governs the arbitration provision. Courts regularly find that the FAA governs agreements involving interstate commerce. *See, e.g.*, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 1476 (1989); *Willie Gary*, 906 A.2d at 80. Moreover, courts regularly find that the FAA applies to arbitration provisions that do not specifically designate the DUAA as governing arbitration. *See, e.g.*, *Calvitti Pools & Spas, Inc. v. Patton*, C.A. No. 2025-0595-CDW, 2026 WL 1078492, at *7 (Del. Ch. Apr. 21, 2026) ("The award is governed by the Federal Arbitration Act ('FAA') because the Arbitration Agreement lacks specific reference to the Delaware Uniform Arbitration Act."); *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 242 A.3d 575, 579 n.11 (Del. 2020) ("Because the parties did not designate the Delaware Uniform Arbitration Act, the FAA governs their arbitration."). Thus, the FAA governs the arbitration provision in this action.

The FAA notwithstanding, Plaintiff is correct that the Court must still apply ordinary principles of Delaware contract interpretation to assess both the parties' intent to arbitrate arbitrability and arbitrability itself. The FAA is implicated insofar as it preempts any Delaware law that conflicts with the FAA's strong policy favoring arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (explaining that the FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration" (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984))). The Court need not worry about such a circumstance because both federal and Delaware law provide that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. *See SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Thus, the Court will interpret § 12.41 in accordance with Delaware's principles of contract formation, and will be guided by the FAA as necessary.

### B. The Agreement Does Not Evince a Clear and Unmistakable Intent to Submit Arbitrability Issues to the Arbitrator

The parties next disagree on whether issues of arbitrability arising from the Agreement should be decided by the Court or by the arbitrator. Because "arbitration is a matter of contract," parties may agree to arbitrate on the issue of arbitrability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Specifically, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). Questions of substantive arbitrability—such as the instant dispute over Plaintiff's consent to arbitrate—concern "the scope of an arbitration provision and its applicability to a given dispute, and are presumptively decided by the court." *Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78, 82 (Del. 2013) (quoting *Viacom Int'l, Inc. v. Winshall*, Civil Action No. 7149-CS, 2012 WL 3249620, at *12 (Del. Ch. Aug. 9, 2012)); *see also AT & T Techs.*, 475 U.S. at 649. That presumption can only be overcome if there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

To determine whether parties to an arbitration agreement have agreed to arbitrate on the question of substantive arbitrability, courts look to state law. *Id.* Delaware courts have adopted the majority federal view regarding what constitutes clear and unmistakable evidence of the parties' intent to overcome the presumption that the court decides questions of substantive arbitrability. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006). Specifically, clear and unmistakable evidence exists if "(1) the parties incorporate into the arbitration clause rules that empower the arbitrator to determine substantive arbitrability, such as the AAA [(American Arbitration Association)] rules, and (2) the arbitration clause generally

provides for arbitration of all disputes." *Aquila of Delaware, Inc. v. Wilmington Tr. Co.*, C.A. No. N10C-07-260 JAP, 2011 WL 1487060, at *2 (Del. Super. Ct. Apr. 19, 2011) (internal marks omitted) (citing *Willie Gary*, 906 A.2d at 79-80). Importantly, however, "[i]f the arbitration clause does not generally provide for arbitration of all disputes, 'something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator.'" *Id.* (quoting *Willie Gary*, 906 A.2d at 80-81). For instance, courts have found that intent to arbitrate arbitrability existed where the contract clarified that the parties would agree to arbitrate certain disputes "including the validity, scope and enforceability of these arbitration provisions." *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119-20 (Del. Ch. 2010); *see also Aquila of Delaware*, 2011 WL 1487060, at *2 (analyzing an arbitration provision with the clause "any dispute concerning the validity or enforceability of this Arbitration Agreement . . . or concerning whether a dispute is arbitrable").

Here, because § 12.41 unambiguously allows for alternative forms of dispute resolution than arbitration—namely, litigation and mediation—this clause does not provide for arbitration of all disputes. *See Willie Gary*, 906 A.2d at 81 (finding that "not all disputes must be referred to arbitration" when the provision expressly authorizes relief in courts). Thus, incorporation of the AAA rules is, by itself, insufficient to establish the parties' intent to submit arbitrability issues to an arbitrator. Since the agreement contains no other indication of intent to submit arbitrability questions to an arbitrator, the parties' dispute over arbitrability is proper for the Court to hear.

### C. The Parties' Dispute Is Substantively Arbitrable

The issue at the core of both Motions is whether Plaintiff consented to the parties' pending arbitration.[1] To determine whether Plaintiff consented to arbitration, the Court must interpret the language of the contract under Delaware law. As explained above, *see supra* Section III.A, the Court will resolve any doubt in favor of arbitration in accordance with the FAA.

Plaintiff claims that it has not consented to arbitration because § 12.41 gives the parties three avenues of dispute resolution: they could "submit to mediation 'before resorting to arbitration *or* litigation,' or they could arbitrate a dispute, or they could litigate a dispute." D.I. 4 at 7 (emphasis in original). In Plaintiff's view, the permissive language that parties "may" mediate or "may" pursue binding arbitration indicates that arbitration cannot proceed absent the parties' consent. *Id.* Since Plaintiff did not consent, and rejected Defendant's request to arbitrate, arbitration cannot proceed. *Id.* Defendant responds that the provision describing the procedures and rules for arbitration provides the "language of a functioning dispute-resolution mechanism that the parties expected to operate when negotiation and mediation did not resolve the dispute." D.I. 12 at 10. Thus, in Defendant's view, the contract requires binding arbitration following or alternatively to negotiation and mediation.

Upon review of relevant case law, the Court finds that, under the Agreement, (1) arbitration became mandatory once invoked, and (2) Plaintiff was not required to consent. The Court's analysis turns on its interpretation of the clause in § 12.41 stating that "***the Parties may*** elect to proceed directly to binding arbitration without mediation." Agreement § 12.41 (emphasis added). Two rationales inform the Court's conclusion. *First*, courts have repeatedly rejected the notion

---

[1] Another gateway question of arbitrability is whether the parties have a valid and enforceable agreement. *Remicade*, 938 F.3d at 519. Since neither party disputes that the Agreement in this action is valid and enforceable, the Court will not analyze that question.

that the word "may" allows for a permissive reading of an arbitration clause in an agreement governed by the FAA. *See, e.g.*, *In re Winstar Commc'ns, Inc.*, 335 B.R. 556, 563 (Bankr. D. Del. 2005) (collecting cases); *Medicis Pharm. Corp. v. Anacor Pharms., Inc.*, C.A. No. 8095-VCP, 2013 WL 4509652, at *5 (Del. Ch. Aug. 12, 2013) (applying Delaware law and citing *Winstar* favorably); *Allen v. Rent-A-Ctr.*, C.A. No. K17C-04-005 NEP, 2017 WL 4338490, at *2 (Del. Super. Ct. Sept. 29, 2017) (finding that the phrase "either party 'may elect'" gave rise to mandatory arbitration). The reasoning for such a reading is that a plain reading of a provision using the word "may" suggests that "the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party." *Allen v. Rent-A-Center*, C.A. No. K17C-04-005 NEP, 2017 WL 4338490 (Del. Super. Ct. Sept. 29, 2017) (quoting *Winstar*, 335 B.R. at 563). Thus, the word "may" merely makes arbitration optional *before* it has been invoked by a party.

*Second*, the use of the phrase "the parties" as opposed to "either party" does not import a requirement of joint action or mutual consent to proceed to arbitration. Again, courts have construed similar phrases in agreements governed by the FAA to mandate arbitration. *Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1356 (Fed. Cir. 2012) (holding that a clause stating that "the parties may invoke the arbitration provision" triggered mandatory arbitration (internal mark and emphasis omitted)); *see also Loc. 771, I.A.T.S.E., AFL-CIO v. RKO Gen., Inc. WOR Div.*, 546 F.2d 1107, 1115-16 (2d Cir. 1977) (holding that a clause stating "[t]he parties may submit to arbitration" triggered mandatory arbitration). Interpreting an arbitration provision to require the mutual consent of the parties would serve no purpose because "[p]arties can always submit disputes to arbitration if they both agree to do so, therefore, there would be no reason to include

such a provision." *Medicis Pharm. Corp.*, 2013 WL 4509652, at *5 (quoting *Winstar*, 335 B.R. at 563). Thus, it follows that either party's invocation of arbitration triggers mandatory arbitration.

Applying these principles to the present action, the phrase "the Parties may elect to proceed directly to binding arbitration" unambiguously indicates that the pursuit of arbitration to resolve disputes arising under the Agreement is optional, but arbitration becomes mandatory once it is invoked by either party. When Plaintiff signed the Agreement, Plaintiff consented to that procedure.

**D. Plaintiff Is Not Entitled to a Preliminary Injunction**

Because the Court has found that the parties' dispute is substantively arbitrable, *see supra* Section III.C, Plaintiff has failed to meet its burden to show a reasonable likelihood of success on the question of whether Plaintiff consented to arbitration. Having found that the first factor for a preliminary injunction is not satisfied, the Court will not analyze the remaining factors for a preliminary injunction. Accordingly, Plaintiff's Motion is denied.

**E. The Court Grants-in-Part and Denies-in-Part Defendant's Motion to Stay Litigation and Compel Arbitration**

Moving to Defendant's Motion, Defendant requests that the Court stay this litigation and compel arbitration in compliance with the FAA. Section 3 of the FAA governs stays of proceedings where the issue therein is referable to arbitration, and it provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Having found that the parties' dispute is arbitrable, *see supra* Section III.C, the Court is satisfied that the parties' dispute is referable to arbitration under their Agreement. Thus, the Court grants Defendant's Motion to stay this litigation pursuant to 9 U.S.C § 3.

The Court denies Defendant's Motion insofar as it seeks to compel arbitration, however, because the parties' arbitration is already proceeding and Defendant has not indicated that Plaintiff has failed to cooperate or refused to partake in that proceeding. *See* 9 U.S.C. § 4 (directing courts to order the parties to proceed to arbitration when one party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration").

## IV. CONCLUSION

For all the reasons set forth above, the Court DENIES Plaintiff's Motion for a Preliminary Injunction (D.I. 3) and GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion to Stay Litigation and Compel Arbitration (D.I. 13). The Court will issue an Order consistent with this Memorandum Opinion.